IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:14-cr-323** |
| | : | |
| **v.** | : | |
| | : | |
| **LAQUAN L. KELLAM** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant's motion to suppress any and all evidence seized and statements given as a result of his arrest, including drugs seized from his person and the residence at 3213 Green Street, as well as a recorded incriminating statement he gave to the police. (Doc. 26.) Defendant has moved to suppress this evidence as fruit of the poisonous tree stemming from his allegedly unlawful arrest. In the alternative, Defendant has moved to suppress the evidence on the grounds that, *inter alia*, he did not consent to the search of the residence and he was not provided his *Miranda* rights. After careful consideration, the court will deny Defendant's motion in its entirety.

## I.    Background

On December 18, 2014, Defendant Laquan Kellam ("Defendant") was charged in a four-count indictment with possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 1-3), and possession with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§

841(a)(1) and 841(b)(1)(A) (Count 4).  Defendant entered a plea of not guilty to the charges on January 27, 2015.

On September 10, 2015, Defendant filed a Motion to Suppress Physical Evidence and Statements (Doc. 26) and an accompanying brief in support (Doc. 28), wherein he argues primarily that the arresting officers had no probable cause to arrest him without a warrant, that he was not advised of his *Miranda* rights, and that he did not consent to the search of 3213 Green Street or voluntarily provide a statement.  The Government filed an opposition to Defendant's motion on September 24, 2015 (Doc. 31), arguing that Defendant's warrantless arrest was lawful because it was based on probable cause that he had committed a felony, that he was in fact advised of his *Miranda* rights, and that he cooperated with the law enforcement officials by consenting to the search of 3213 Green Street and providing a statement.  (Doc. 31).  The court held an evidentiary hearing on the motion on October 6, 2015.  Following the hearing, the court requested that the parties file supplemental briefs on the issue of whether probable cause existed for Defendant's warrantless arrest.  The Government and Defendant filed their supplemental briefs on October 16, 2015 (Doc. 39) and October 23, 2015 (Doc. 40), respectively.  Jury selection in this matter is scheduled to begin on November 2, 2015, with trial commencing on November 9, 2015.

**II.**      **Findings of Fact[1]**

Detective David Lau ("Detective Lau") of the Harrisburg Bureau of Police testified on behalf of the Government regarding the circumstances surrounding Defendant's arrest and the search of 3213 Green Street.  They are as follows.

On June 20, 25, and 27, 2014, Detective Lau conducted surveillance as Defendant sold an "8 ball," or 3.5 grams, of crack cocaine to a confidential informant in Harrisburg, Pennsylvania.  Prior to each controlled buy, Detective Lau met with the informant and directed him to arrange a meeting to purchase an "8 ball" of crack cocaine for $175 from a person known to the informant as "Los," who Detective Lau had identified as Defendant.  Detective Lau then listened as the informant placed the call to set up the controlled buy.  Although Detective Lau never heard the individuals specifically discuss crack cocaine or "8 balls," he did hear them engage in what he considered to be a drug-related conversation and reference a "small boy," which he assumed was another term for "8 ball."

Each time, the informant was provided with $175 of photographed vice funds to purchase the crack cocaine, and he and his vehicle were searched for drugs and other contraband.  The informant would then go directly to a designated

---

[1] Unless otherwise noted, the following factual account represents the facts the court credits upon consideration of the testimony and evidence presented during the evidentiary hearing on October 6, 2015.

location to meet Defendant.  Each transaction was surveilled by law enforcement officers and video recorded and/or photographed.  However, none of the actual hand-to-hand deliveries of the cash or crack cocaine were witnessed by law enforcement, and at one point during the June 25, 2014 transaction, the detectives lost sight of the informant for approximately thirty seconds.

At the completion of each buy, the officers followed the informant to a secure location where he and his vehicle were searched.  Aside from the crack cocaine allegedly obtained through the controlled purchase, no drugs, money, or contraband were found.

During the first and third encounters between Defendant and the informant, Defendant drove a black Nissan, and during the second encounter, he drove a gray BMW.  Following the first encounter, Detective Lau ran the license plate number of the black Nissan and learned that the vehicle was registered to an Ashley Smith ("Ms. Smith") with an address of 3213 Green Street, Harrisburg, Pennsylvania.  Detective Lau subsequently drove to the Green Street residence and observed a burgundy minivan parked in the rear driveway.  The informant had previously told Detective Lau that Defendant was known to drive a burgundy minivan to drug transactions.  From June 27, 2014 to July 18, 2014, Detective Lau conducted additional surveillance of the Green Street residence on at least three

occasions.  However, he never observed anything to suggest that drugs were being sold out of the home.

While conducting additional surveillance on July 28, 2014, Detective Lau observed Defendant leave the Green Street residence at approximately 1:30 p.m. and drive away on a motorized scooter.  Detective Lau immediately contacted Dauphin County Sheriff Deputy Josh Avilles and directed him to initiate a traffic stop on Defendant's vehicle in order to arrest him for the prior drug deliveries.  Deputy Avilles and his partner stopped Defendant a few blocks away from the Green Street residence and took him into custody without incident.

Detective Lau arrived at the scene of the arrest and advised Defendant that he was under arrest for the sale of crack cocaine.  He then provided Defendant with his *Miranda* rights in the presence of the deputies, and Defendant indicated that he understood those rights and that he wanted to cooperate.  Detective Lau then asked Defendant if he had any drugs or weapons on him, and Defendant responded that he had crack cocaine in his pocket.  Upon searching Defendant, Detective Lau obtained three "8 ball" quantities of crack cocaine, $535 in cash, and two cell phones, one of which was associated with the number used to set up the prior drug transactions with the informant.

Detective Lau asked Defendant if he had any additional cash, drugs or weapons at the Green Street residence, and Defendant advised that he had "a lot"

5

of crack cocaine and cash at the house.  Detective Lau asked Defendant for consent

to search the home and advised Defendant that he had the absolute right to

withhold his consent and to compel the officers to make an application to the court

for a search warrant.  Defendant stated that a warrant would not be necessary and

provided his consent to the search.  The two deputies then transported Defendant

back to the Green Street residence and Detective Lau followed.

Upon arrival at the Green Street residence, Defendant provided Detective

Lau with the key to open the back door.  As they entered, they immediately saw

Ms. Smith, the mother of two of Defendant's children, in the kitchen.  Detective

Lau explained to her that Defendant was under arrest for the sale of crack cocaine.

At that time, Defendant informed Ms. Smith that it was his intent to cooperate with

the officers, and Detective Lau explained that, although they had Defendant's

consent to search the home, they would not conduct the search without first

obtaining a search warrant unless they also had her consent.  Ms. Smith provided

verbal consent.  Thereafter, Defendant, who was still in handcuffs, directed

Detective Lau to a box in a kitchen cabinet that contained multiple bags of crack

cocaine packaged in "8 ball" quantities, totaling fifteen ounces, or approximately

425 grams.  Defendant then informed Detective Lau that there was cash and a nine

millimeter handgun in an upstairs bedroom, which the officers seized as evidence.

Due to Defendant's cooperation in turning over those items, Detective Lau decided to forego searching the remainder of the house.

Following the search of the home, the officers transported Defendant to the Harrisburg Bureau of Police Station where Detective Lau and two other law enforcement officials interviewed him about his involvement in drug trafficking. In an audio-recorded statement, Detective Lau and Defendant engaged in the following exchange:

> Q: Did I advise you of your constitutional rights prior to you giving us this statement?
> A: Yes.
> Q: Do you understand those rights?
> A: Yes.
> Q: And understanding those rights do you want to proceed at this time?
> A: Yes.

(Gov. Ex. 2., p. 2 of 21.)  After Defendant made a statement suggesting that Detective Lau had promised him leniency if he cooperated, Detective Lau clarified that, while aiding in a further investigation could be to his benefit, any decision regarding the charges filed against him would be made by the District Attorney's office.  (*Id.* at pp. 2-3 of 21.)  Defendant acknowledged that he understood.  (*Id.* at p. 3 of 21.)  Following that exchange, Detective Lau asked Defendant a series of questions and Defendant's responses thereto implicated him as drug dealer.  The statement concluded at 3:32 p.m., and Defendant was released with the understanding that he would cooperate in a further investigation.

7

At the evidentiary hearing on Defendant's motion to suppress, Detective Lau characterized the events occurring on July 18, 2015 as "very calm" and described Defendant as "very cooperative" and "humble."  Detective Lau explained that he did not obtain written consent forms from either Defendant or Ms. Smith for the search of the Green Street residence because they consented verbally and in the presence of the two sheriffs.  He also directed the court's attention to the recorded statement, where he had reviewed the events of that day with Defendant, including providing Defendant with his *Miranda* rights and obtaining his consent to the search of the Green Street residence.

Defendant's testimony at the hearing was in stark contrast to that of Detective Lau.  Defendant testified that Detective Lau did not provide him his *Miranda* rights, and—further—that he has never been advised of his constitutional rights despite being arrested multiple times.  He also testified that he did not consent to the search of the Green Street residence, and instead explained to Detective Lau that the Green Street residence belongs to Ms. Smith and that he had only been there on the day of his arrest to pick up his children, but they were at the park.  Defendant clarified that, for approximately two years prior to his arrest, he had been living exclusively with his girlfriend and their two children on 6th Street. He explained that he had no personal belongings at the Green Street residence, that he never stayed overnight at the home, and that Ms. Smith had only given him a

key to the house a couple days before his arrest so that he could pick up his children.  Defendant further testified that Detective Lau coerced him into giving his statement by threatening to arrest Ms. Smith if he did not cooperate, and that Detective Lau followed through on his threat when he arrested Ms. Smith several days later after Defendant failed to cooperate.

All of the crack cocaine seized from Defendant and the Green Street residence was packaged as evidence and sent to the Pennsylvania State Police laboratory for analysis.  The forensic exam concluded that the substances in the plastic bags contained cocaine and that the total weight was approximately 428.86 grams.

## III.    Discussion

In his motion to suppress, Defendant argues that the physical evidence recovered at the scene of his arrest and from the search of the Green Street residence, as well as the statements he gave at the police station, were obtained in violation of his Fourth Amendment rights and must be suppressed.  "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2005).  The applicable burden of proof is by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

A.    **The Arrest**

The primary issue before the court is whether the three controlled drug purchases occurring nearly one month prior to Defendant's arrest provided probable cause for Detective Lau to arrest Defendant in a public place without a warrant.  Defendant challenges the validity of those controlled buys as a basis for probable cause, claiming, *inter alia*, that Detective Lau had ample time to obtain a warrant and that nothing immediately precipitating the arrest provided probable cause to arrest Defendant that afternoon.  The Government, on the other hand, argues that the arrest was lawful because Detective Lau had probable cause to believe Defendant had committed a felony.  *See generally United States v. Watson*, 423 U.S. 411 (1976).  Because the court is bound by Supreme Court precedent, it is constrained to find that the warrantless arrest did not violate the Fourth Amendment.

The Fourth Amendment provides:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend. IV.  This does not mean that all searches and seizures require the issuance of a warrant.  Rather, the Fourth Amendment merely proscribes those searches—with or without a warrant—that are unreasonable.

In this regard, the Supreme Court has held that a search of private property "conducted outside the judicial process, without prior approval by a judge or magistrate, [is] per se unreasonable—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Thus, in order to protect the privacy of the individual, the general rule is that a warrant must be obtained prior to a search. *Katz v. United States*, 389 U.S. 347, 357 (1967).

Because the Fourth Amendment speaks indistinguishably of both searches and seizures, it would seem that the constitutional provision should impose the same limitations, if not more, upon arrests that it does upon seizures. *Watson*, 423 U.S. at 445-46 (Marshall, J., dissenting); *see id.* at 428 (Powell, J., concurring). However, in *Watson*, the Supreme Court took the reverse approach for arrests, holding that a warrantless arrest is reasonable so long as the law enforcement official has probable cause to believe that a felony has occurred. *See id.*at 416-24; *Florida v. White*, 526 U.S. 559, 565 (1999) (citing *Watson*, 423 U.S. at 416-24). Thus, according to Supreme Court jurisprudence, the proper "inquiry is 'not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest.'" *United States v. Bizier*, 111 F.3d 214, 217 (1st Cir. 1997) (quoting *Watson*, 423 U.S. at 417)). The *Watson* court summarized as follows:

11

> Law enforcement officers may find it wise to seek arrest
> warrants where practicable to do so, and their judgments
> about probable cause may be more readily accepted
> where backed by a warrant issued by a magistrate.  But
> we decline to transform this judicial preference into a
> constitutional rule when the judgment of the Nation and
> Congress has for so long been to authorize warrantless
> public arrests on probable cause rather than encumber
> criminal prosecutions with endless litigation with respect
> to the existence of exigent circumstances, whether it was
> practicable to get a warrant, whether the suspect was
> about to flee, and the like.

*Watson*, 423 U.S. at 423-24 (citations omitted).

As such, there is no need here to examine whether circumstances immediately preceding Defendant's arrest justified it or whether Detective Lau could have obtained a warrant from a neutral magistrate in the weeks that had lapsed since the controlled buys.  Rather, under *Watson*, the court's inquiry here is quite limited.

First, there is no question that Defendant's arrest occurred in a public place: a public street.  Second, there is no question that Detective Lau had probable cause to believe that a felony had occurred.  *See Watson*, 423 U.S. at 416-24; *see United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992) (citing *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990) (stating that probable cause exists "where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe that an offense has been committed.")  Indeed, Detective Lau orchestrated and observed Defendant sell

crack cocaine to a confidential informant on three occasions, thus providing probable cause to believe that Defendant had committed a felony.  That probable cause did not dissipate because several weeks had passed since the last controlled buy.  As Justice Powell observed in his concurrence in *Watson*, probable cause to support an arrest normally would grow stale only if it emerges that it was based on since discredited information.  *Watson*, 423 U.S. at 432 n.5 (Powell, J., concurring); *see id.* at 449 (Marshall, J., dissenting).   Here, no new intervening information emerged to weaken the probable cause based on the controlled buys, and thus, probable cause existed for Detective Lau to effect Defendant's arrest on July 18, 2014.  *See McGlory*, 968 F.2d at 342 (holding that district court's finding of probable cause was fully supported on the fact that the arresting officer previously observed the defendant participate in a controlled buy); *Bizier*, 111 F.3d at 219 (finding probable cause to arrest existed based on two controlled buys in the previous two weeks); *see also Hernandez v. City of Union City*, 264 F. App'x 221. 223 (3d Cir. 2008) (finding, in the context of a Section 1983 case, that officers had probable cause to arrest the defendant based on a controlled buy that occurred several weeks prior to his arrest).  Under *Watson* and its progeny, Detective Lau was not required to get a warrant.

Defendant nevertheless attempts to undermine Detective Lau's probable cause with arguments relating to the reliability of the informant and whether he

may have been facing criminal charges himself.  Even if the informant had a

questionable record, however, the fact remains that Detective Lau coordinated

three controlled buys from Defendant of a substance confirmed to be crack

cocaine.  Each time, Detective Lau met with the informant, searched his person

and vehicle for drugs, provided him with cash to buy the narcotics, observed him

meet with Defendant, and established that the informant emerged from the

transaction in possession of crack cocaine and without the vice funds.  The strength

of this evidence, obtained through carefully-executed police procedure, trumps any

alleged failings of the informant.  *See United States v. Sanchez*, 246 F. App'x 803,

805-806 (3d Cir. 2007) (citations omitted).  Indeed, "a closely supervised and

controlled purchase of narcotics establishes ample probable cause." *Id.* at 806

(citing *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006)) ("Given the

level of independent corroboration provided by the police surveillance of the

confidential informant's controlled buys in this case, the addition of negative

information about the confidential informant's credibility or veracity would not

change the outcome because it does nothing to defeat a showing of probable

cause."); *see United States v. Gallo*, 110 F. App'x 265, 268 (3d Cir. 2004)

(crediting a confidential informant by virtue of a successful controlled buy).

Accordingly, the court finds that the controlled buys provided probable

cause for Detective Lau to believe that Defendant had committed a crime.  The

court therefore concludes that Defendant was lawfully arrested and will deny his

motion to suppress the evidence seized and statements given as fruit of the

poisonous tree.

> **B.    The Search**

Defendant also challenges the constitutionality of the search of 3213

Green Street on the ground that he did not consent to the search, but merely

acquiesced to the officers' show of authority.  Defendant argues that the

Government is unable to meet its burden of proof that Defendant consented to the

search, particularly because it did not obtain his written consent.

As stated above, "searches and seizures inside a home without a warrant

are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

Nevertheless, it is "well settled that one of the specifically established exceptions

to the requirements of both a warrant and probable cause is a search that is

conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973).  To justify a search based on consent, the government "has the burden of

proving that the consent was, in fact, freely and voluntarily given. *United States v.

Price*, 558 F.3d 270, 277-78 (3d Cir. 2009) (citing *Bumper v. North Carolina*, 391

U.S. 543, 548 (1968)).  To determine whether consent was given voluntarily, a

court examines the totality of the circumstances.  *Price*, 558 F.3d at 278 (citing

*Schneckloth*, 412 U.S. at 227).  Factors important to this analysis include the age,

education, and intelligence of the consenter, whether he was advised of his

constitutional rights, the length of the encounter, the duration of the questioning,

and the use of physical force. *Id*. Also relevant is the setting in which the consent

was obtained and the parties' verbal and non-verbal actions. *United States v.*

*Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (citing *United States ex rel. Harris v.*

*Hendricks*, 423 F.2d 1096 (3d Cir. 1970)); *see also Price*, 558 F.3d at 278 (citing

*Schneckloth*, 412 U.S. at 226). Fundamental to the concept of voluntariness is that

consent must not be coerced. *Schneckloth*, 412 U.S. at 228.

In this case, the testimony established that Defendant voluntarily

consented to Detective Lau's request for permission to search 3213 Green Street.

As an initial matter, there is no evidence of record suggesting that Defendant's age,

intelligence, or educational background rendered his consent involuntary. Based

on the testimony presented at the hearing, the court finds the testimony of

Detective Lau to be far more credible than that of Defendant. Detective Lau's

testimony established that Defendant was advised of his constitutional rights[2] at the

time of his arrest and consented to the search of 3213 Green Street only moments

later. Detective Lau's failure to obtain Defendant's written consent to the search

does not alter the court's conclusion, especially in light of the recorded statement

---

[2] The court's finding in this regard is discussed in detail, *infra*, Section II.C.

wherein Detective Lau stated, without any objection, that Defendant had consented to the search.

Furthermore, the court rejects Defendant's argument that, even if he had consented, he lacked the authority to do so.  Although Defendant testified that he did not reside at 3213 Green Street, did not stay there overnight, did not ordinarily possess a key to the home, and did not have any belongings there, the court did not find Defendant's testimony in this regard credible.  To the contrary, the facts presented at the hearing established that Defendant was at 3213 Green Street the day of his arrest without his children, he was in possession of a key to the house, and, significantly, he was knowledgeable as to the whereabouts of the contraband within the home.  In addition, the court credits Detective Lau's testimony that Defendant consented to the search of the house without any objection to the effect that it was not his residence.  Thus, at the very least, the court concludes that Defendant possessed joint access of the property and was therefore authorized to consent to its search.  *See United States v. Matlock*, 415 U.S. 164, 170 (1974) (stating that a third party has actual authority to consent to a search of another's home when the third party possesses common authority over or joint access or control of the property).  Moreover, the officers withheld searching until they obtained the consent of both Defendant and Ms. Smith.

Accordingly, based on the totality of the circumstances, the court finds that Defendant gave his consent to the search of 3213 Green Street voluntarily, and therefore, no search warrant was required.

### C.   The Statements

Defendant's final claim is that the statements he made to the law enforcement officials after he was taken into custody, particularly those provided in his recorded statement, should be suppressed because they were given involuntarily and obtained in violation of his *Miranda* rights.  Specifically, Defendant argues that the Government is unable to meet its burden of proof that he was given his *Miranda* rights and that he knowingly and voluntarily waived them prior to his custodial interrogation.  Due to that defect, Defendant argues that his statement must be suppressed.

The Fifth Amendment to the United States Constitution contains an individual privilege against self-incrimination, and *Miranda v. Arizona*, 384 U.S. 436 (1966) provides a mechanism to safeguard that privilege.  *Id.* at 467 ("In order . . . to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored.").  Before an interrogation, the accused must be fully informed of the "State's intention to use his statements to secure a conviction," *Moran v. Burbine*, 475 U.S. 412, 420 (1986), and of his

rights to remain silent and to have counsel present, *Miranda*, 384 U.S. at 469.  The

accused may waive his rights verbally or in writing, so long as he makes "a

deliberate choice to relinquish the protection those rights afford."  *United States v.*

*Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012) (quoting *Berghuis v. Thompkins*, 560

U.S. 370, 385 (2010)).  When the issue of waiver arises on a motion to suppress

statements, the government bears the burden of proving by a preponderance of the

evidence that: (1) the defendant was properly advised of his *Miranda* rights; (2) the

defendant voluntarily, knowingly, and intelligently waived his rights; and (3) the

ensuing statement was made voluntarily.  *Colorado v. Connelly*, 479 U.S. 157, 169

(1986); *United States v. Jacobs*, 431 F.3d 99, 108-09 (3d Cir. 2005); *see also*

*United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005) ("A defendant may

waive his *Miranda* rights if the waiver is made knowingly, intelligently, and

voluntarily.")  A court will first inquiry whether "the relinquishment of the right

was voluntary in the sense that it was the product of a free and deliberate choice,"

and whether the waiver was "made with a full awareness of both the nature of the

right being abandoned and the consequences of the decision to abandon it."

*Moran*, 475 at 421.  Factors relevant to determining whether a statement is

voluntary include:  whether the police engaged in coercive activity; the length,

location, and continuity of the interrogation; the age, education, physical and

mental condition of the defendant; and whether *Miranda* rights were given. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993).

The crucial factor in a voluntariness inquiry is that of police coercion. A confession must not have been "extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight." *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (citations omitted). Similarly, a law enforcement officer's words or deeds that are likely to cause a suspect to believe he will suffer serious adverse consequences if he does not cooperate, or will receive substantial leniency if he does, can render a confession involuntary. *See United States v. Walton*, 10 F.3d 1024, 1028-29 (3d Cir. 1993).

The court finds that Defendant both received and waived his *Miranda* rights, and that he made his statement voluntarily. At the outset, the court finds Defendant's assertion that he has never been given his *Miranda* rights despite being arrested ten times[3] implausible, and therefore easily discredits Defendant's testimony that he was not provided his rights in this instance. Instead, the court credits the testimony of Detective Lau in finding that Defendant was provided his *Miranda* rights immediately following his arrest and that his waiver of his rights was informed and voluntary. Detective Lau's testimony is corroborated by the recorded statement, wherein Detective Lau asked Defendant if he had been advised

---

[3] Although the court recognizes that Defendant disputes that he has been arrested ten times, the court finds his criminal history record more reliable in this regard.

20

of his constitutional rights and was choosing to waive them, and Defendant replied in the affirmative.  Furthermore, there is no credible indication that Defendant was misled or threatened or that he did not understand his *Miranda* rights when he waived them.  In this regard, Defendant's argument that Detective Lau made threats to prosecute Ms. Smith which coerced him to make the statements has little appeal.  Even assuming, *arguendo*, that the court found credible Defendant's testimony in this regard, the court would be hard-pressed to conclude that such a statement constituted a level of coercion that placed Defendant under undue stress and emotional duress to make his waiver involuntary, especially considering that all of the events transpiring that day occurred in the span of two hours.

In sum, the recorded statement, together with the corroborating testimony of Detective Lau, provides a sufficient basis to conclude that Defendant freely and deliberately relinquished his Fifth Amendment rights against self-incrimination.

## IV.   Conclusion

After consideration of all the circumstances presented herein, the court finds that the Government has proven by a preponderance of the evidence that Defendant was lawfully arrested, that he was fully advised of and waived his *Miranda* rights, that he had the authority to give and voluntarily gave consent for the law enforcement officials to search 3213 Green Street, and that his statements

were made voluntarily.  Accordingly, the court will deny Defendant's motion to

suppress in its entirety.

An appropriate order will issue.


 s/Sylvia H. Rambo
United States District Judge

Dated: October 29, 2015