IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:14-cr-323 |
| | : | |
| v. | : | |
| | : | |
| LAQUAN L. KELLAM | : | Judge Sylvia H. Rambo |

# M E M O R A N D U M

On April 18, 2016, in anticipation of Defendant Laquan Kellam's ("Defendant") trial, which is scheduled to commence on June 27, 2016, the Government filed a motion *in limine* pursuant to Federal Rule of Evidence 404(b) seeking to introduce evidence at trial concerning a firearm purchased by a third party. (Doc. 68.) The Government seeks to admit the evidence to prove that Defendant is guilty of jointly and constructively possessing a different firearm in the course of his alleged narcotics trafficking activities. Defendant opposed the motion on June 7, 2016 (Doc. 77), and the Government replied on June 16, 2016 (Doc. 83). Upon consideration of the parties' positions and after hearing oral argument from counsel on June 14, 2016, and for the reasons detailed below, the court will grant the Government's motion.

I. **Factual Background and Proposed Evidence**

As the facts and circumstances of this case are well known by the parties, and the trial in this matter is imminent, the court limits its discussion to those facts which are relevant to the disposition of the instant dispute.[1]

**A. Relevant background of pending criminal charges**

On December 18, 2014, a grand jury indicted Defendant for three counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (Counts 1-3), and one count of possession with intent to distribute 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count 4). Defendant entered a plea of not guilty to the charges on January 27, 2015.

Each of the distribution charges in the indictment related to three controlled buys orchestrated by law enforcement officials during which Defendant sold 3.5 grams of crack cocaine to a confidential informant. Count 4 of the indictment related to crack cocaine obtained during Defendant's subsequent arrest for the controlled buys. Pertinent to the matter *sub judice*, Defendant was arrested after a law enforcement officer observed him emerge from a residence located at 3212 Green Street in Harrisburg, Pennsylvania (the "Green Street residence").

---

[1] A further discussion of the facts and procedural history of this case can be found in the court's prior decision denying Defendant's motion to suppress evidence. *See United States v. Kellam*, Crim. No. 1:14-cr-323, 2015 WL 6560637 (M.D. Pa. Oct. 29, 2015).

(Oct. 6, 2015 Hr'g Tr. at 4-9.) During the course of his arrest, Defendant directed the arresting officers to three individually-wrapped packages of crack cocaine and $535 in cash located in his pockets. (*Id.* at 10-11.) When asked if he had any additional cash, drugs or weapons within the Green Street residence, Defendant advised that he had "a lot" of crack cocaine and cash at the house, and agreed to accompany the officers to the Green Street residence to recover those items. (*Id.* at 12-13.) Upon entering the residence using a key provided by Defendant, the officers obtained additional consent to search the home from Ashley Smith, who was in the kitchen as they entered the residence. (*Id.* at 15-16.) Thereafter, Defendant directed the officers to a box in a kitchen cabinet that contained approximately 425 grams of crack cocaine, to approximately $2,000 in a dresser drawer in an upstairs bedroom, and to a shoulder-holstered 9-millimeter Beretta handgun hanging from the bedpost in the same bedroom. (*Id.* at 18-19.) On October 28, 2015, the grand jury returned a superseding indictment charging a fifth count for possession of a firearm in furtherance of drug trafficking, related to the firearm seized from the Green Street residence. (*See* Doc. 42.)

### B. Contested 404(b) evidence[2]

The Government seeks to introduce evidence that Defendant "jointly and constructively possessed firearms in furtherance of his drug trafficking charges

---

[2] Unless specifically disputed by Defendant, all facts herein are taken from the Government's motion *in limine*. (*See* Doc. 70, pp. 2-6.)

through the use of two female companions—Ashley Smith and Evalina Thomas." (Doc. 70, p. 4.) In a recorded statement taken following his arrest, Defendant identified Ms. Smith, the owner/occupant of the Green Street residence who was present during the search, as his girlfriend. Defendant subsequently testified that he has two children, ages 8 and 11, with Ms. Smith. During the October 6, 2015 evidentiary hearing on his motion to suppress, however, Defendant denied having a relationship with Ms. Smith and explained that, for approximately two years prior to his arrest, he had been living exclusively with Ms. Thomas, who he also referred to as his girlfriend, and their two children, ages 7 and 13, at 1414 North 6th Street in Harrisburg, Pennsylvania. He stated that he had no personal belongings at the Green Street residence, that he never stayed overnight at the home, and that Ms. Smith had only given him a key to the house a couple days before his arrest so that he could pick up his children.

During Defendant's October 15, 2015 detention hearing, Ms. Thomas likewise testified that she and Defendant resided together on 6th Street with their two children. Significantly, Ms. Thomas revealed during her testimony that, while Defendant lived with her, she owned a firearm which she kept in a holster in the bedroom. Investigators later confirmed that Ms. Thomas had purchased a 9-millimeter Taurus handgun a few weeks after Ms. Smith purchased the 9-millimeter Beretta handgun seized from the Green Street residence. Both women

purchased the handguns from the same firearms dealer, the Bass Pro Shop in Harrisburg, Pennsylvania, and both women had obtained concealed carry permits several weeks before purchasing their respective handguns. Investigators further determined that Defendant used cars belonging to each woman during the course of the three controlled buys charged in the indictment. For two of the buys, he used a black Nissan registered to Ms. Smith, and for the third controlled buy, he used a gray BMW registered to Ms. Thomas.

On April 18, 2016, the Government filed a motion *in limine* to admit the evidence it collected concerning Ms. Thomas's firearm, including the timing and place of its purchase, which the Government contends is admissible under Rule 404(b) to prove Defendant's intent, knowledge, preparation and plan to possess the firearm purchased by Ms. Smith in furtherance of his drug trafficking activities. Defendant has not been charged in relation to the firearm purchased by Ms. Thomas.

## II.     Legal Standard

Evidence of a criminal defendant's uncharged conduct, including crimes, wrongs or other acts may be admissible if the evidence is intrinsic to the charged offense, or if the evidence is extrinsic to the charged offense but is offered for a proper purpose under Rule 404(b). *United States v. Harris*, Crim. No. 11-cr-196, 2012 WL 3962651, *4 (citing *United States v. Green*, 617 F.3d 233, 245-49 (3d

Cir. 2010)). Within the Third Circuit, uncharged acts are considered intrinsic to the charged offense if the evidence "directly proves the charged offense" or if they are "performed contemporaneously with the charged crime" and "facilitate the commission of the charged crime." *Id.* (quoting *Green*, 617 F.3d at 248-49.) Intrinsic evidence is admissible without the need for the prosecution to provide notice to the defendant before trial or for the court to provide limiting instructions to the jury during trial. *Id.* If the uncharged acts are not intrinsic, they are considered extrinsic evidence and must meet the requirements of Federal Rule of Evidence 404(b) prior to being admitted at trial.

Under Rule 404(b), "[e]vidence of a crime, wrong, or other act" for which the defendant is not charged is inadmissible to show that the defendant has a propensity to act in a certain manner. Fed. R. Evid. 404(b)(1). Such evidence may be admissible, however, for another relevant purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Third Circuit has explained that "Rule 404(b) is a rule of general exclusion, and carries with it 'no presumption of admissibility.'" *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:28, at 731 (4th ed. 2013)). Therefore, evidence of uncharged crimes or wrongs is "inadmissible unless the evidence is (1) offered for a proper non-propensity

purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 that its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *Id.* Because of the highly prejudicial nature of other-acts evidence, the rule "requires care from prosecutors and judges alike." *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013).

### III. Discussion

In its motion *in limine*, the Government contends that the other-acts evidence related to Ms. Thomas's acquisition and possession of a firearm is admissible to show that Defendant constructively possessed Ms. Smith's firearm in furtherance of drug trafficking activities. The court now turns to the issues presented by the motion as they relate to the four-step analysis described above.

### A. Whether the evidence is offered for a non-propensity purpose at issue in the case

The first step in the analysis requires the court to determine "whether the evidence is probative of a material issue other than character." *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2003) (citations omitted). To determine whether an "identified purpose is 'at issue,' courts should consider the 'material issues and facts the government must prove to obtain a conviction.'" *Caldwell*, 760 F.3d at 276 (quoting *United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992)). While the "burden on the government is not onerous," *Sampson*, 980 F.2d at 887, the

7

specific purpose must be "of consequence in determining the action." *Caldwell*, 760 F.3d at 276 (quoting Fed. R. Evid. 401(b)).

In Count 5 of the Superseding Indictment, Defendant is charged with possession of a firearm, specifically the 9-millimeter Beretta registered to Ms. Smith, in furtherance of drug trafficking in violation of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(i). (Doc. 42, Count 5.) This charge requires the Government to prove two elements: (1) that Defendant committed the crime of possession with intent to distribute a controlled substance, as charged in Count 4 of the Superseding Indictment; and (2) that Defendant knowingly possessed a firearm in furtherance of that crime. In order to show possession, the Government must prove that Defendant actually or constructively possessed the firearm. In this regard, the Government anticipates that Defendant will claim that the firearm seized from the Green Street residence was possessed solely by Ms. Smith, and therefore, evidence showing that Defendant constructively and jointly possessed a firearm through Ms. Thomas in a nearly identical manner is critical to establishing his knowledge, intent, preparation, and plan to possess a firearm through Ms. Smith. Because this evidence goes directly to whether Defendant "knowingly possessed" a firearm in furtherance of drug trafficking, the court finds that it is being offered for a non-propensity purpose. *See United States v. Brown*, 765 F.3d 278, 292 (3d Cir. 2014) ("[E]vidence of knowledge is critical in constructive possession cases as a

defendant will often deny any knowledge of a thing found in an area that is placed under his control (*e.g.*, a residence, an automobile).") (internal citation omitted).

### B. Whether the evidence is relevant to the identified purpose

In the second step of the Rule 404(b) analysis, both the government and the district court must explain how the evidence is relevant to, or how it tends to establish, the identified non-propensity purpose. *Caldwell*, 760 F.3d at 276. "This step is crucial." *Id.* The government "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed [the other act], he therefore is more likely to have committed this one.'" *United States v. Lee*, 612 F.3d 170, 186 (3d Cir. 2006) (quoting *Sampson*, 980 F.2d at 887). The district court must also provide such an articulation upon granting the government's motion.

The court finds that the evidence related to Ms. Thomas's firearm fits squarely into the chain of inferences required by *Caldwell*, particularly as the evidence permits the inference that Defendant has engaged in a distinctive pattern of behavior without reliance on any improper inference about Defendant's propensity to possess firearms. Indeed, the facts surrounding Ms. Thomas's purchase and possession of a firearm do not show that Defendant has a bad character or a propensity to commit firearm offenses as he is not directly linked to any of the evidence the Government seeks to introduce. That is, nothing about the

dates on which Ms. Thomas obtained a concealed carry permit and firearm, or the locations where she purchased and stored it, go to Defendant's character. Rather, the evidence related to Ms. Thomas's firearm ownership shows that two similarly situated individuals—both closely associated with Defendant—followed unique and near-identical patterns of contemporaneous activity, and permits the inference that Defendant constructively possessed Ms. Smith's firearm. (Doc. 83, pp. 2-3.)

More specifically, and as provided by the Government in support of their motion, Ms. Thomas's acquisition and possession of a firearm fits into a chain of logical inferences to show that Defendant knowingly possessed Ms. Smith's firearm in furtherance of drug trafficking activities as follows:

1. The jury may infer that Ms. Thomas and Ms. Smith purchased and possessed similar firearms under near-identical fact patterns;

2. The jury may infer that [Defendant] possessed both firearms jointly and constructively with Ms. Thomas and Ms. Smith, given both his relationship with them and their other apparent nexuses to his trafficking activities;

3. The jury may infer that [Defendant] did not directly possess those firearms in an effort to disassociate himself from them and manufacture a future alibi or defense; and

4. The jury may infer that [Defendant] thus is more likely to have knowingly possessed Ms. Smith's firearm, which was recovered from the same residence as [the seized] narcotics and proceeds, in furtherance of his trafficking activities.

10

(*Id.* at pp. 4-5.) These inferences are relevant to showing Defendant's knowledge that he possessed a firearm and the pattern, including the plan and preparation, by which he executed his scheme to possess firearms in furtherance of drug trafficking, without any reliance upon an improper propensity inference.

Moreover, this evidence provides the jury with relevant circumstantial and contextual information, and "one proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact." *Green*, 617 F.3d at 250 (3d Cir. 2010); *see Bourjaily v. United States*, 483 U.S. 171, 179-80 (1987) ("[I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."). As the Government points out, the evidence pertaining to the firearm found in the Green Street residence, when viewed in isolation, may not give the jury an accurate understanding of the complete picture. (Doc. 70, p. 10.) However, the comparative patterns by which Ms. Smith and Ms. Thomas obtained and stored their firearms may permit the inference that Defendant orchestrated the purchases to conduct his drug trafficking activities and took steps to conceal his *de facto* possession of the firearms in order to manufacture an alibi or defense, should he eventually be caught. (*Id.*) These scenarios go directly to the issue of whether Defendant constructively possessed Ms. Smith's firearm by

having "the power and intention to exercise control over it," regardless of ownership or actual possession. 3d Cir. Model Jury Instructions, § 6.18.922G-4.

### C. Whether the evidence is sufficiently probative

Once the court finds that the proponent has shown that the evidence is relevant for a proper, non-propensity purpose, the court must proceed to decide, under Rule 403, "whether the evidence is sufficiently probative, such that its probative value is not outweighed by the inherently prejudicial nature" of other act evidence. *Caldwell*, 760 F.3d at 277 (citing *Sampson*, 980 F.2d at 889). This Rule 403 balancing takes on a special significance when dealing with Rule 404(b) evidence because "few categories of evidence bring greater risk of prejudice to the accused." *Id.* (quoting Mueller, *Federal Evidence* § 4.28, at 731). However, mere prejudice to the defendant is not enough. Rather, "[i]t must always be remembered that *unfair* prejudice is what Rule 403 is meant to guard against, that is, prejudice based on something *other* than the evidence's persuasive weight." *United States v. Bergrin*, 682 F.3d 261, 279 (3d Cir. 2012) (citations omitted).

Because the similarities between Ms. Smith's and Ms. Thomas's acquisition and ownership of the firearms are directly probative of Defendant's intent, knowledge, plan, and preparation, the probative value of the proffered evidence outweighs any prejudicial effect, which in this instance, is more properly deemed duly prejudicial.

### D. Limiting instruction

If the court determines that the evidence survives the Rule 403 balancing test, it must provide a limiting instruction to the jury at the time the evidence is admitted if requested to do so by the defendant. *Id.* The jury in this case will be so instructed if requested.

## IV. Conclusion

For the reasons stated above, the court will grant the Government's motion *in limine* to permit the introduction at trial of evidence concerning the firearm purchased by Ms. Thomas, including when presented in a summary demonstrative.

                                      s/Sylvia H. Rambo
                                      SYLVIA H. RAMBO
                                      United States District Judge

Dated: June 22, 2016