IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Crim. No. 1:14-CR-323 |
| | : | |
| v. | : | |
| | : | |
| **LAQUAN KELLAM** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is Defendant Laquan Kellam's motion to vacate his conviction and sentence under 28 U.S.C. § 2255. (Docs. 180, 188.) For the reasons set forth below, the motion will be denied.

### I.   BACKGROUND

On June 29, 2016, a jury found Mr. Kellam guilty of four drug charges and one firearm charge. (Doc. 95.) The government presented evidence at trial that on three occasions in June 2014, Mr. Kellam sold crack cocaine to a confidential informant in controlled purchases that were overseen by Detective David Lau. Detective Lau then surveilled the Green Street residence of Ashley Smith, the mother of Mr. Kellam's children and the registrant of a vehicle he used in the drug sales, and thereafter arrested Mr. Kellam when he was observed leaving the house. Detective Lau discovered crack cocaine on Mr. Kellam's person and a large stash of

1

crack cocaine and a firearm in the Green Street residence. In June 2017, the court sentenced Mr. Kellam to a term of imprisonment of 181 months. (Doc. 130.)

Mr. Kellam appealed his conviction and argued, among other things, that the court wrongly denied his suppression motion because the sheriffs lacked authority to arrest him without a warrant and because police did not have consent to search the residence. (Doc. 190-3 at 15.) Mr. Kellam also argued that the court did not properly instruct the jury regarding Detective Lau's testimony as both an expert and fact witness. (*Id*. at 15–16.) The Third Circuit affirmed the judgment, and the United States Supreme Court denied certiorari on October 7, 2019. *United States v. Kellam*, 751 F. App'x 184 (3d Cir. 2018); *Kellam v. United States*, 140 S. Ct. 199 (2019).

Mr. Kellam now moves to vacate his conviction and sentence under § 2255, asserting ineffective assistance of counsel, a *Brady* violation, and a due process violation based on alleged perjury at trial. (Docs. 180, 188.) Having been fully briefed, these matters are ripe for review.[1]

## II. STANDARD OF REVIEW

A federal prisoner may challenge his sentence or conviction by motion to the sentencing court pursuant to 28 U.S.C. § 2255. To prevail, the petitioner must show

---

[1] Under Local Rule 7.7, a court will not consider Mr. Kellam's untimely second reply brief filed without the leave of court. (Doc. 194.) Beyond the procedural ground for excluding it, the additional brief appears only to restate arguments raised in the filed letter which supplements the operative § 2255 motion. (See Doc. 188.)

"(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Bates*, No. 3:04-CR-0251, 2008 WL 80048, at *2 (M.D. Pa. Jan. 7, 2008) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). The petitioner generally has the burden of proving by a preponderance of the evidence that he is entitled to relief. *See United States v. Hollis*, 569 F.2d 199, 205 (3d Cir. 1977); *United States v. Ayers*, 938 F. Supp. 2d 108, 112 (D.D.C. 2013); *Pazden v. Maurer*, 424 F.3d 303, 313 (3d Cir. 2005).

The court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Arrington*, 13 F.4th 331, 334 (3d Cir. 2021) (quoting 28 U.S.C. § 2255(b)). To determine whether a hearing is appropriate, the court assesses whether the petitioner's nonfrivolous factual claims plausibly establish an entitlement to relief. *Id.* at 334–35. The court is not required to accept or further investigate "vague and conclusory allegations." *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

Claims not raised on direct appeal are procedurally defaulted and can only be reviewed if the petitioner demonstrates "(1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982); *see also Bousley v. United States*, 523 U.S. 614, 621 (1998). Claims of ineffective assistance of counsel, by contrast,

"may be brought in the first instance by way of a § 2255 motion regardless of whether the movant could have asserted the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

### III. DISCUSSION

#### A. Mr. Kellam's claims of ineffective assistance of counsel do not merit relief.

Mr. Kellam's motion argues that his sentence should be vacated because his trial attorney, Shawn Dorward, Esquire, provided ineffective assistance by failing to challenge the authority of the arresting sheriffs, by failing to call Ms. Smith to testify at the suppression hearing, and by representing Mr. Kellam under a conflict of interest.

To prove ineffective assistance of counsel, a petitioner must establish that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 691 (1984). The first element requires the petitioner to demonstrate that "counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). Proving a deficiency in conduct requires showing "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* (quoting *Strickland*, 466 U.S. at 687). "In assessing counsel's performance, 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

4

evaluate the conduct from counsel's perspective at the time.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). "That is to say, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

The second element requires the petitioner to show that counsel's performance caused unfair prejudice, or a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. It is not enough to show that "the error had some conceivable effect on the outcome of the proceeding, for virtually every act or omission would meet that test." *Id.* at 693. Rather, counsel's conduct must have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Put differently, the error must be "so serious as to deprive the defendant of a trial . . . whose result is reliable." *Id.* at 687.

Here, Mr. Kellam's first argument that counsel was ineffective because he did not challenge the authority of the arresting sheriffs is not persuasive. The motion does not set forth a plausible claim that the omission was unreasonable error, let alone one that risked prejudicing Mr. Kellam. According to the testimony at trial, the sheriffs who arrested Mr. Kellam were acting at the direction and under the

5

supervision of Detective Lau, a police officer vested with arrest authority. Detective Lau testified that he observed the sheriffs arrest Mr. Kellam in accordance with his instructions, at which point he immediately approached Mr. Kellam and announced the basis of the arrest, read Mr. Kellam his *Miranda* rights, and conducted a search of Mr. Kellam's person incident to the arrest. (*See* Doc. 190-5 at 102:7–103:23.) These circumstances point toward a valid arrest, because while sheriffs generally may not conduct independent investigations for offenses they did not witness, they have a "well-documented and salutary role in support of those law enforcement agencies so authorized." *Commonwealth v. Dobbins*, 934 A.2d 1170, 1181 n.21 (2007); *see United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) (stating that the validity of an arrest is governed by "the law of the state where the arrest occurred") (citing *Ker v. California*, 374 U.S. 23, 37 (1963) (plurality opinion)); *Commonwealth v. Marconi*, 64 A.3d 1036, 1043–44 (2013) (noting that sheriffs do not possess general police power "beyond the authority to arrest for in-presence breaches of the peace and felonies in the absence of express legislative designation"). Mr. Kellam's motion does not cite any persuasive authority to the contrary. Nor does it credibly contend that the sheriffs independently investigated and arrested Mr. Kellam in violation of Pennsylvania law. As such, the motion fails to plausibly allege that counsel's decision not to pursue these arguments was an error of constitutional magnitude that created a reasonable probability of prejudice.

Next, the motion argues that counsel was ineffective for not calling Ms. Smith to testify at the suppression hearing, and it attaches an affidavit from Ms. Smith swearing that Mr. Kellam did not reside at the Green Street residence and that Detective Lau did not ask for her consent to search the property. (Doc. 180 at 13.) As with the defense's first argument, however, the motion does not plausibly allege that the omission was an unreasonable error that risked prejudice to Mr. Kellam, since Ms. Smith's testimony as set forth in her affidavit would not have been material to the issue of consent and would not have changed the outcome of the suppression hearing.

Even assuming the truth of Ms. Smith's affidavit statements that Mr. Kellam did not reside at the Green Street residence and that Detective Lau never requested her consent to search the property, neither piece of testimony would have undermined Mr. Kellam's apparent authority to consent to the search. *See Kellam*, 2015 WL 6560637, at *6 (finding that Mr. Kellam provided valid consent for the search given his possession of a house key and knowledge of where contraband was located inside the house). A person has apparent authority to give valid consent where (1) the officer believed an untrue fact that was relied upon to assess the consent-giver's authority; (2) the circumstances made it reasonable for the searching officer to believe the untrue fact; and (3) the consent-giver would have had actual authority if the untrue fact was true. *United States v. Burton*, 193 F.R.D. 232, 241–

42 (E.D. Pa. 2000) (citing *United States v. Fiorillo*, 186 F.3d 1136, 1144 (9th Cir. 1999)); *see also Illinois v. Rodriguez*, 497 U.S. 177, 180–81 (1990). Neither piece of Ms. Smith's proposed testimony addresses the first two elements, whether Detective Lau actually believed Mr. Kellam lived there and whether his belief was reasonable under the known circumstances. Under the third element, it is well-settled law that if Mr. Kellam in fact lived there, he would have had authority to consent. *See Fernandez v. California*, 134 S. Ct. 1126, 1129 (2014). The motion therefore does not plausibly allege that counsel's failure to call Ms. Smith at the suppression hearing was an unreasonable error that risked prejudice to Mr. Kellam.

Lastly, Mr. Kellam argues that Mr. Dorward was ineffective because he had a conflict of interest that likely caused him not to call Ms. Smith to testify at the suppression hearing. (Doc. 180 ¶ 53.) Mr. Dorward's law firm represented both Mr. Kellam and Ms. Smith as co-defendants in a state criminal case related to the same incident. The motion contends that Mr. Dorward likely did not call as Ms. Smith as a witness because he was concerned that prosecutors would bring charges against her in retaliation for her testimony.

The Sixth Amendment right to effective counsel includes a right to an attorney without an actual conflict of interest. *Strickland*, 466 U.S. at 692. A habeas petitioner can demonstrate a Sixth Amendment violation by showing that counsel was actively representing conflicting interests and the conflict had an adverse effect on specific

8

aspects of counsel's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "An actual conflict 'is evidenced if during the course of the representation, the defendants' interests diverge with respect to a material factual or legal issue or to a course of action." *Harmer v. Superintendent Fayette SCI*, No. 19-CV-3146, 2021 WL 3560666, at *3 (3d Cir. Aug. 12, 2021) (quoting *Gambino*, 864 F.2d at 1070). Conflicts most commonly arise from "joint representation in a single proceeding." *Gambino*, 864 F.2d at 1070. However, even dual representation does not categorically create a conflict of interest. *United States v. Healy*, No. 09-CR-319, 2013 WL 1307463, at *3 (M.D. Pa. 2013). The mere "possibility of a conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. Adverse effect is established if "some plausible alternative defense strategy or tactic might have been pursued that was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Harmer*, 2021 WL 3560666, at *3 (quoting *Gambino*, 864 F.2d at 1070) (quotation omitted).

    Here, the defense's motion does not plausibly allege that Mr. Kellam's and Ms. Smith's interests inherently diverged or that calling Ms. Smith was a plausible alternative defense strategy that conflicted with counsel's other loyalties. The motion contains no facts to suggest that the interests of Mr. Kellam and Ms. Smith inherently diverged, and its claim that Mr. Dorward was concerned about prosecutors committing ethical violations by charging Ms. Smith in retaliation for

her testimony is pure speculation. *See United States v. Harrison*, 910 F.3d 824, 827 (5th Cir. 2018) (requiring more than a speculative or potential conflict); *Cuyler*, 446 U.S. at 350 (holding that a mere possibility of conflict is insufficient). As such, the defense has not met its burden of showing that Mr. Dorward acted under a conflict of interest. Nor has it plausibly demonstrated that calling Ms. Smith would have conflicted with Mr. Dorward's other loyalties. Because these allegations do not plausibly merit relief, the court will deny the claim without further investigation.

### B. Mr. Kellam's *Brady* claim is procedurally defaulted.

The motion also argues that the prosecution withheld photos of the prerecorded vice funds used in the controlled buys, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). "The Supreme Court has outlined a three-part test to determine if a *Brady* violation has occurred: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Lewis v. Horn*, 581 F.3d 92, 108 (3d Cir. 2009) (quoting *Banks v. Dretke*, 540 U.S. 668, 691 (2004)). For withheld evidence to violate *Brady*, it must be material such that it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998). Where a defendant fails to allege a *Brady* violation on direct appeal, the claim is procedurally defaulted and

immune from collateral attack absent a showing of cause and actual prejudice. *Frady*, 456 U.S. at 168.

Here, the government's alleged *Brady* violation does not provide grounds for relief because Mr. Kellam did not raise his argument on direct appeal and has not alleged the requisite cause or prejudice to overcome his procedural default. The record is rife with evidence that the defense had knowledge of the photographs in advance of trial and as early as March 2015, yet Mr. Kellam's motion provides no credible explanation for the failure to previously raise the *Brady* violation. (*See* Doc. 190 at 31 (referencing the photographs in police reports disclosed on March 18, 2015); Doc. 190-4 at 47:2 (defense counsel cross-examining a witness about the "photographed vice funds" at the suppression hearing); *see also* Doc. 190-5 at 23:1–12, 164:19–165:1; Doc. 190-6 at 384:9–18.) Nor does the motion make any substantive argument that the supposed *Brady* violation caused prejudice or undermined the reliability of the trial in any way. Mr. Kellam's *Brady* claim is therefore procedurally defaulted.

### C. Mr. Kellam's due process claim does not merit relief.

Finally, the motion also argues that Detective Lau's testimony that Mr. Kellam consented to the residence search was perjury and violated his due process rights to a fair trial. In support, Mr. Kellam attaches a June 2021 civil complaint filed by a plaintiff with no involvement in this case alleging that Detective Lau committed

11

civil rights violations by fabricating, withholding, and misrepresenting evidence to convict the plaintiff of a murder of which he was subsequently exonerated. (Doc. 188 at 5–41.)

This ground for relief, which is analogous to an otherwise time-barred motion under Federal Rule of Criminal Procedure 33 for a new trial based on newly discovered information, may be considered as part of Mr. Kellam's § 2255 motion because it alleges that perjury by Detective Lau violated his constitutional trial rights. *See* 28 U.S.C. § 2255; *United States v. McArthur*, 107 F. App'x 275, 277 (3d Cir. 2004). To succeed on such a claim, the petitioner must establish that a witness gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Williams*, 974 F.3d 320, 355 (3d Cir. 2020) (quotation omitted). Perjury violates due process when prosecutors knew or should have known they were presenting material, false information and fail to correct it. *Id.* If the government admitted the perjured testimony without fault, the central question is whether "the jury probably would have acquitted in the absence of the false testimony." *United States v. Edwards*, No. 10-CR-36, 2011 WL 5834241, at *5 (D.V.I. Nov. 18, 2011), *aff'd sub nom.* 747 F.3d 186 (3d Cir. 2014).

Here, the motion does not plausibly allege that Detective Lau's testimony was false, let alone perjurious. Detective Lau has not recanted, nor has any evidence

emerged to establish that he lied at trial or in the suppression hearing. The attached civil complaint at most impeaches Detective Lau by implying a propensity to lie or manipulate evidence, and such newly discovered impeachment evidence does not justify a new trial where, as here, there is no factual link that directly suggests the defendant was wrongfully convicted. *See United States v. Quiles*, 618 F.3d 383, 391–92 (3d Cir. 2010); *Government of the Virgin Islands v. Lima*, 774 F.2d 1245, 1250 (3d Cir. 1985) (enumerating five requirements for new trial under Rule 33, including that the newly acquired evidence not be merely impeaching and that it "would probably produce an acquittal"); *McArthur*, 107 F. App'x at 277 (finding that a witness's subsequent perjury conviction for testimony in a separate case did not alone merit a new trial on constitutional grounds).[2]

Moreover, even if the defense could show perjury, its claim would still fail because the record does not support that the jury would likely have acquitted Mr. Kellam but for the perjured testimony. *See Edwards*, 2011 WL 5834241, at *5. The trial evidence against Mr. Kellam was extensive, including testimony from a second law enforcement officer, surveillance photographs and videos, a confidential

---

[2] The motion also attempts to show perjury by pointing to inconsistencies between Detective Lau's and a second officer's testimony regarding the manner in which Detective Lau obtained the house key. These allegations are equally unpersuasive. Inconsistent testimony can be attributed to a faulty memory and does not establish perjury, and indeed, Detective Lau hedged his trial testimony about acquiring the house key: "I don't know how exactly that transpired. It's been too long. I just know that he gave me the key, and he directed me to open the door." (Doc. 190-5 at 183:16–18.)

informant's testimony regarding three controlled buys, Mr. Kellam's own admissions upon arrest; crack cocaine and money found on his person; and his recorded confession detailing his drug trafficking operation. (Docs. 89–91, 137–39.) The motion thus does not plausibly allege that Mr. Kellam likely would have been acquitted but for Detective Lau's alleged perjury, and the court will deny relief without further fact finding.

## IV. CONCLUSION

For the reasons explained above, the court will deny Defendant Laquan Kellam's motion to vacate his conviction and sentence under 28 U.S.C. § 2255 without a hearing. An appropriate order shall follow.

*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 19, 2022